# CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-6371-GW-AGRx | Date | October 3, 2019 |
| Title | *Julia G. Durward v. One Technologies LLC, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | Terri A. Hourigan | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Ju-In Daniel Jung<br>Thomas V. Anderson | Witt W. Chang<br>Ari N. Rothman |

**PROCEEDINGS:** PLAINTIFF'S MOTION TO REMAND [17];

DEFENDANT ONE TECHNOLOGIES, LLC'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2) [9]

SCHEDULING CONFERENCE

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, the Motions are TAKEN UNDER SUBMISSION. Court to issue ruling.

The scheduling conference is taken off-calendar.

: 25

Initials of Preparer  JG

<u>*Julia G. Durward v. One Technologies LLC, and DOES 1-50 inclusive*</u>; Case No. 2:19-cv-06371-GW
Tentative Rulings on Motion to Dismiss and Motion to Remand

I.  **Background**

Plaintiff Julia Durward sues Defendants One Technologies LLC ("OneTech") and Does 1-50 inclusive for violations of the California Business and Professions Code §§ 17529.5(a)(1) and 17529.5(a)(2) arising from unsolicited emails. *See generally* Complaint, Docket No. 1-1. Plaintiff seeks statutory damages of $1,000 per email, attorneys' fees, and costs. *Id.* ¶ 5.

Plaintiff alleges the following: Plaintiff is an individual residing in Los Angeles County, in California. *Id.* ¶ 7. OneTech is a Delaware limited liability company headquartered in Dallas, Texas. *Id.* ¶ 8. OneTech, which owns and operates several websites, engages numerous third party affiliates (the "advertising affiliates") to advertise for OneTech. *Id.* ¶ 3-4. Defendants or their agents sent at least 90 allegedly unlawful Unsolicited Commercial Emails ("spams") to Plaintiff. *Id.* ¶ 1. OneTech's agents used self-destructing emails to hide both their and OneTech's identities in order to avoid liability for their illegal activities. *Id.* ¶ 2. The advertising affiliates send millions of unlawful commercial emails to recipients that did not give consent to receive them. *Id.* ¶ 4. Many of the emails include false and/or misrepresented headers, such as "from" names and email addresses that misrepresent or hide the identity of the sender. *Id.* ¶ 4. Defendants' emails were designed to trick recipients into opening them. *Id.* ¶ 23. Many of the emails contain remote-hosted images, which Defendants' agents used to "essentially self-destruct the emails after a short period of time, so as to prevent people from making complaints about Defendants and their agents." *Id.* ¶ 26-28. At least 15 of the emails contain third-party domain names belonging to Walmart, Netflix, Ebay, Aliexpress, and Craigslist. *Id.* ¶ 30. The domain names were used without the permission of those entities. *Id.* ¶ 30. Plaintiff received the complained-of emails in a computer located within Los Angeles County. *Id.* ¶ 9.

Plaintiff brought suit in Los Angeles Superior Court, and Defendants removed to this Court. *See generally* Notice of Removal, Docket No. 1. Defendants filed a Motion to Dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). *See generally* Motion to Dismiss ("MTD"), Docket No. 9. Plaintiff opposed, *see* Opposition to Motion to Dismiss ("MTD Opp'n"), Docket No. 19, and Defendant replied, *see* Reply in support of Motion to Dismiss ("MTD Reply"), Docket No. 21. Plaintiff filed a Motion to Remand for "lack of Article III standing." *See* Motion

to Remand ("MTR"), Docket No. 17. Defendant opposed, *see* Opposition to Motion to Remand ("MTR Opp'n"), Docket No. 18, and Plaintiff replied, *see* Reply to Defendant's Opposition to Notice to Remand ("MTR Reply"), Docket No. 25.

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure ("Rule") 12(b)(2) allows a court to dismiss a matter for "lack of jurisdiction over the person." When a defendant moves to dismiss for lack of personal jurisdiction, the burden shifts to the plaintiff to establish the court's personal jurisdiction over the defendant. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). The plaintiff may meet this burden by making a "prima facie showing of jurisdictional facts." *Pebble Beach*, 453 F.3d at 1154. "Where not directly controverted, plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion to dismiss." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). "[C]onflicts between the facts contained in the parties' affidavits must be resolved in [the defendant's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (quoting *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).

Where there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). California permits "[a] court of [the] state [to] exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. C. § 410.10; *Fireman's Fund Ins. Co. v. National Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir. 1996) *see also Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (California's statutory limitation is "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court"). A court may exercise personal jurisdiction over a nonresident defendant consistently with due process only so long as there exist "minimum contacts" between the defendant and the forum, such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and quotations omitted).

Personal jurisdiction may be either general or specific. *See Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 41, nn. 8 & 9 (1984). A defendant is present "generally" in

the forum when its activities in the state are "substantial" or "continuous and systematic." *Sher* 911 F.2d at 1361. Where general jurisdiction does not exist, the Ninth Circuit has established a three-factor test to evaluate whether the court may exercise specific jurisdiction over a defendant:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum state or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must arise out of or result from the defendant's forum-related activity; and/or
>
> (3) the exercise of jurisdiction must be reasonable.

*Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1188 (9th Cir. 2002) (footnote omitted). The first prong of the test may be satisfied by showing that a defendant either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The Ninth Circuit further explained this standard in *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017):

> "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden*, 134 S. Ct. at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)) (internal quotation marks omitted). Specifically, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id*. Our "primary concern" is "the burden on the defendant." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780, 198 L. Ed. 2d 395 (2017) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).
>
> Two principles animate the "defendant-focused" inquiry. *Walden*, 134 S. Ct. at 1122. First, the relationship between the nonresident defendant, the forum, and the litigation "must arise out of contacts that the 'defendant himself' creates with the forum State." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Second, the minimum contacts analysis examines "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. It follows that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id*. at 1123.

*Axiom*, 874 F.3d at 1068.

B. Article III Standing

In order for a court to have subject matter jurisdiction, a plaintiff must have Article III standing to bring a claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also*

U.S. Const. art. III, § 2. "Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In order to have constitutional standing, the following elements must be established: (1) the plaintiff must have suffered an "injury in fact," (2) there must be some causal connection between the injury and the conduct complained of, and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. To establish injury in fact, the alleged invasion of a legally protected interest must be both "concrete and particularized" and "actual or imminent," not "conjectural" or "hypothetical." *Id.* at 560. "[A] plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Even then, Article III standing requires a concrete injury." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 931 (2018) (internal quotation marks, citations and alteration omitted). "To establish such an injury, the plaintiff must allege a statutory violation that caused him to suffer some harm that actually exists in the world; there must be an injury that is real and not abstract or merely procedural." *Id*.

### III. Discussion

#### A. Rule 12(b)(2)

##### 1. *General Jurisdiction*

According to the Supreme Court, a corporation may be subject to general jurisdiction in a state only if its contacts with that state are so "continuous and systematic" that it is "essentially at home in the forum State." *Daimler AG v. Bauman*, 134 U.S. 746, 761 (2014). OneTech is a Texas limited liability company with its principal place of business in New York, Flour Fund has its principal place of business in Texas, and all of its members are Texas citizens. *See Zittlau Declaration in Support of MTD* ("Zittlau Decl.") ¶ 2. Plaintiff does not assert that this Court has general jurisdiction over Defendants. *See* Opp'n to MTD, p. 8. Accordingly, this Court concludes that Defendants are not subject to general jurisdiction in California.

##### 2. *Specific Jurisdiction*

As described above, this Court applies a three-prong test for determining whether specific personal jurisdiction exists:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum state or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum state, thereby invoking the

4

benefits and protections of its laws;

(2) the claim must arise out of or result from the defendant's forum-related activity; and/or

(3) the exercise of jurisdiction must be reasonable.

*Ochoa*, 287 F.3d at 1188. The plaintiff bears the burden of satisfying the first two prongs of the test; if the plaintiff does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

Plaintiff claims that the alleged spam emails are "the center of Defendant[s'] consistent, ongoing, and sophisticated sales effort that has always included California." *See* Opp'n to MTD, p. 12. Thus, this Court must next address whether the alleged spam emails advertising OneTech confer specific personal jurisdiction on this Court. The one case to consider a nearly identical question, *Zoobuh, Inc. v. Williams*, No. 2:13–CV–791-TS, 2014 WL 7261786 (D. Utah Dec. 18, 2014) ("*Zoobuh/Williams*"), concluded that such emails did not create the necessary minimum contacts with the forum state to serve as a basis for specific personal jurisdiction. In *Zoobuh/Williams*, the plaintiff, Zoobuh, which provided email, blog, and chat services, sued the defendant, Thrive, a digital marketing company that contracted with third-party publishers to send advertising emails. *See id.* at *1. Zoobuh alleged that Thrive, either directly or through third-party publishers, sent tens of thousands of marketing emails to Zoobuh customers. *See id.* Thrive responded with a declaration stating that the emails at issue were sent by the third-party publishers with whom Thrive had contracted, and that Thrive had "no involvement with, or control over, the origination, approval, or delivery of the emails." *Id.* at *5. Moreover, Thrive asserted that it did not "draft the content of the emails sent by the publishers; review or approve them; know where (i.e., the location or the recipient) the publishers send the emails; or decide the customers to whom the publishers should publish the emails." *Id.* The court in that case found that the emails directed into the forum state did not provide a basis for specific personal jurisdiction, explaining:

> Based upon the evidence presented, the Court cannot find that Defendant Thrive directly took any actions that are the subject of this litigation. Instead, Defendant used third parties who sent the emails of which Plaintiff complains. Plaintiff seeks to impute the actions of these third-party publishers, arguing that they are Defendant's agents or representatives. However, there is no evidence upon which the Court could find an agency relationship. Defendant Thrive has stated that it has no involvement with or control over the origination, approval, or delivery of

5

the emails. "It does not draft the content of the emails sent by the publishers; review or approve them; know where (i.e., the location or the recipient) the publishers send the emails; or decide the customers to whom the publishers should publish the emails."

> Based upon this evidence, there is nothing that would permit the Court to impute the contacts of these third-party publishers to Defendant Thrive. While it is likely that the Court would be able to exercise jurisdiction over the publishers based on the emails they sent into Utah, Plaintiff has provided no basis to allow the Court to exercise jurisdiction over Defendant Thrive. As the Supreme Court has recently emphasized, a defendant's "relationship [with the forum state] must arise out of contacts that the 'defendant himself' creates with the forum State." [*Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).] The Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." At best, Plaintiff has shown contacts with the third-party publishers and Utah, but has not provided evidence of any minimum contacts between Defendant and the forum state. Therefore, the Court lacks jurisdiction over Defendant Thrive.

*Id.* (footnotes omitted).

The same is true in this case. OneTech has provided a Declaration from its Compliance Manager explaining its email marketing process. *See* Zittlau Decl., ¶¶ 10-13, Docket No. 9-2. Zittlau states that "publishers control all aspects of transmitting the emails and make fundamental decisions concerning the emails themselves, including choosing each email's recipient." *Id.*, ¶ 11.[1] Moreover:

> One Technologies also does not decide the recipients of the emails that publishers send. One Technologies does not know, does not direct, and has no control over, where the emails are sent, other than to prohibit publishers from sending email advertisements to email addresses associated with recipients who have requested to "opt-out" of receiving emails advertising One Technologies. One Technologies would not be able to identify the location of any given email recipient because, unlike phone number area codes, email addresses are not connected to any particular geographic location.

---

[1] As set forth in the Zittlau declaration:

10. One Technologies does not send any emails to consumers with whom it does not have an existing or current business relationship. One Technologies relies solely on independent contractors known as "publishers" or "affiliates" to send emails advertising One Technologies' products and services. These publishers send emails advertising multiple companies, and not just One Technologies.

11. One Technologies requires publishers to comply with applicable laws and regulations and follow One Technologies' email compliance policy. However, publishers control all aspects of transmitting the emails and make fundamental decisions concerning the emails themselves, including choosing each email's recipient.

*See* Zittlau Decl., ¶¶ 10-11.

*Id.*, ¶ 12. Plaintiff has not adduced any evidence to dispute those assertions. This case is therefore like *Zoobuh/Williams*, in which emails sent by third-party marketing publishers could not be attributed to the defendant for purposes of establishing purposeful availment for specific personal jurisdiction.[2] [3]

This outcome aligns with analogous decisions by courts finding that advertising in nationally-distributed magazines does not create sufficient contacts with a state to establish purposeful availment, despite the likelihood that those advertisements would reach consumers in the forum states. *See, e.g.*, *Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*, 2011 WL 333337, at *3 (D. Ariz. Jan. 31, 2011) (nationally-distributed email advertisements not sufficient to confer specific personal jurisdiction, because "[s]uch nation-wide advertisements d[id] not constitute 'individualized targeting' by Defendants"); *Cascade Corp. v. Hiab-Foco AB*, 619 F.2d 36, 37-38 (9th Cir. 1980) (advertising in national publications, among other contacts, not sufficient to confer specific personal jurisdiction); *Alsop v. Carolina Custom Prods.*, 2007 U.S. Dist. LEXIS 65679, at *20 (C.D. Cal. June 29, 2007) (same). Other cases Plaintiff cites are not persuasive: the Ninth Circuit granted rehearing en banc in *Gator.Com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1078 (9th Cir. 2003), and determined that "[t]he three-judge panel opinion shall not be cited as precedent by or to this court or any district court of the Ninth Circuit, except to the extent adopted by the en banc court." *Gator.com Corp. v. L.L. Bean, Inc.*, 366 F.3d 789 (9th Cir. 2004). *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773, 104 S. Ct. 1473, 1478 (1984) involved a magazine circulated by the defendant itself, not a third party, as here. And in *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1209 (9th Cir. 2006), the defendants seeking dismissal had obtained orders from a French court directing the plaintiff to take action in California.

---

[2] In *XMission, L.C. v. Click Sales, Inc.*, No. 2:17-CV-1287-DAK, 2019 WL 1574810, at *5 (D. Utah Apr. 11, 2019), the following distinction was drawn between the *Zoobuh/Williams* situation and the scenario in a related *Zoobuh* case where personal jurisdiction was found certain of the relevant emails had in fact been sent by the defendant.

> Because this case involves emails sent directly from ClickBank, instead of only emails it may have enabled or encouraged third-party affiliates to send, the case is similar to *Zoobuh, Inc. v. Savicom, Inc.*, Case No. 2:17-cv-1098JNP, 2018 WL 2768665 (D. Utah June 8, 2018), and distinguishable from *Zoobuh, Inc. v. Williams*, Case No. 2:13-cv-791TS, 2014 WL 7261786 (D. Utah Dec. 18, 2014). As in *Savicom*, XMission has alleged that ClickBank directly sent emails to Utah and that some of XMission's CAN-SPAM claims arise out of those emails.

[3] Plaintiff attempts to distinguish *Zoobuh* by arguing that the defendant in that case only derived *de minimis* income from the forum, and OneTech has not alleged that its income from marketing emails in California is similarly *de minimis*. *See* MTD Opp'n, p. 12. However, *Zoobuh* only addressed the portion of the defendant's income that was related to the forum state in its discussion of general jurisdiction, not specific jurisdiction. *See Zoobuh*, 2014 WL 7261786, at *3.

Plaintiff points out that OneTech's website is programmed to accept customers from California. *See* Opp'n to MTD, p. 11. However, even if the fact that OneTech's website accepts customers from California were sufficient to satisfy the first prong of specific personal jurisdiction, it does not satisfy the second. *See Ochoa*, 287 F.3d at 1188. Plaintiff's claim arises from the spam emails she alleges she received, not from any interaction with OneTech's website. The cases in which a website targeting a state's residents suffices to confer personal jurisdiction involve "tortious conduct on a nationally accessible website." *See DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 880 (N.D. Cal. 2012) (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011)). In this case, Plaintiff's alleged injury does not arise from any alleged targeting of California consumers by OneTech's website. Therefore, OneTech's website's availability to California customers does not confer specific personal jurisdiction on this Court.

Plaintiff also alleges that OneTech's partnership with California business Cake Marketing ("Cake") constitutes purposeful availment of the privilege of conducting activities in California. *See* MTD Opp'n, p. 13-14. According to Plaintiff, the links in OneTech's marketing emails route through Cake's systems. *See id*. The Court would find that this, in itself, does not provide the necessary contact between Defendants and California. The minimum contacts analysis examines "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). It is true that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with . . . other parties. But a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Id*. Nothing in Plaintiff's allegations regarding the alleged partnership between Cake and OneTech indicates that Defendants "invoked the benefits and protections of [California's] laws." *Burger King*, 471 U.S. at 476. The fact alone that OneTech did business with a California company, without, for instance, evidence that the companies signed a contract in California or that the partnership created an ongoing relationship in California related to the distribution of the spam emails, is not enough to demonstrate purposeful availment for the specific jurisdiction analysis. The Court finds that Plaintiff has not established the first prong of the three-prong test for specific personal jurisdiction, *see Ochoa*, 287 F.3d at 1188, and the Court would therefore grant Defendants' Motion to Dismiss.[4]

---

[4] The Court would deny Plaintiff's Motion for Judicial Notice ("MJN"), Docket No. 19-2. The first request is not relevant, because the location of OneTech's founding does not affect the personal jurisdiction analysis. Courts need not grant judicial notice as to irrelevant facts. *See Kuba v. Sea World, Inc.*, 428 F. App'x 728, 732 (9th Cir.

B. Standing

Plaintiff argues that this Court should remand the case to state court based on a lack of Article III standing. *See* MTR, p. 1. She argues only that she lacks standing because she has not alleged an injury in fact. *See generally, id.* According to Plaintiff, the fact that she is only seeking statutory damages, rather than damages for actual harm, demonstrates that she is not alleging an injury in fact. *See id.* p. 6.

This Court is inclined to find that Plaintiff has Article III standing. Plaintiff sues Defendants for allegedly sending unsolicited and misleading commercial emails, in violation of Cal. Bus. & Prof. Code § 17529(a). While "a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," "some statutory violations, alone, do establish concrete harm." *Robins*, 867 F.3d at 1112-1113. The inquiry turns on whether the statute codifies a substantive or a procedural right. If the right is substantive, then a plaintiff's allegation of a violation of the statute may be sufficient to confer standing. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017).

The Ninth Circuit has found violations of similar statutes, the Telephone Consumer Protection Act (TCPA) and of the Video Privacy Protection Act (VPPA), sufficient *per se* to establish a concrete injury sufficient under Article III. *Id.* (finding violation of VPPA sufficient *per se* to confer standing); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) (finding sending unwanted text messages in violation of TCPA sufficient *per se* to confer standing). Relevant considerations include "both history and the judgment of [the legislature],"

---

2011). Requests 2-4 state that in 2014 the Federal Trade Commission ("FTC") filed a lawsuit against OneTech in the Northern District of California, alleging that OneTech has customers in San Francisco, and culminating in a stipulated judgment in which OneTech admitted to personal jurisdiction in the Northern District of California. *See* MJN, ¶¶ 2-4. The location in which the previous lawsuit was filed and the allegations in the complaint of that lawsuit do not bear on whether personal jurisdiction exists in this case. And OneTech admitted the facts necessary to establish jurisdiction "[o]nly for the purposes of th[at] action." Zittlau Decl., Exhibit B, p. 2. A court may not take judicial notice of matters that are in dispute or of findings of fact from another case. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 & n.5 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). The FTC's decision to file against OneTech in 2014 in the Northern District of California and to allege that OneTech has thousands of customers there does not establish specific personal jurisdiction in this case, and OneTech's concession of jurisdiction in the 2014 case was clearly limited to that case. For the same reason, request 5, asserting that Defendant was sued in the Eastern District of California in 2018 does not indicate that specific personal jurisdiction exists in this case; to the extent Plaintiff hopes this Court will credit the underlying accuracy of that plaintiff's calculation regarding jurisdiction, this Court may not do so. *See id.* Finally, Plaintiff asserts in request 6 that OneTech partners with a California third party, Extole, in connection with its marketing. However, Plaintiff provides no information linking Extole with the alleged spam emails in this case. Without more, request 6 does not provide support for Plaintiff's argument that specific personal jurisdiction exists.

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016), and whether every violation of the statute "presents the precise harm and infringes the same [substantive] interests [the legislature] sought to protect by enacting the [statute]," *Van Patten*, 847 F.3d at 1043.

In this case, it is clear that the legislature created a substantive right in Cal. Bus. & Prof. Code § 17529.5(a). The statute prohibits transmission of "(1) [an] e-mail advertisement [that] contains or is accompanied by a third-party's domain name without the permission of the third party"; and "(2) [an] e-mail advertisement [that] contains or is accompanied by falsified, misrepresented, or forged header information." Cal. Bus. & Prof. Code. § 17529.5(a). On its face, therefore, the statute creates substantive, not procedural, restrictions. Moreover, the legislature made specific findings relating to the harms resulting from unsolicited emails, including that:

> (b) The increase in spam is not only an annoyance but is also an increasing drain on corporate budgets and possibly a threat to the continued usefulness of the most successful tool of the computer age.
>
> (e) Like junk faxes, spam imposes a cost on users, using up valuable storage space in e-mail inboxes, as well as costly computer band width, and on networks and the computer servers that power them, and discourages people from using e-mail.
>
> (g) Like traditional paper "junk" mail, spam can be annoying and waste time, but it also causes many additional problems because it is easy and inexpensive to create, but difficult and costly to eliminate.
>
> (h) The "cost shifting" from deceptive spammers to Internet business and e-mail users has been likened to sending junk mail with postage due or making telemarketing calls to someone's pay-per-minute cellular phone.
>
> (i) Many spammers have become so adept at masking their tracks that they are rarely found, and are so technologically sophisticated that they can adjust their systems to counter special filters and other barriers against spam and can even electronically commandeer unprotected computers, turning them into spam-launching weapons of mass production.

Cal. Bus. & Prof. Code. § 17529. Findings (e) and (h) explicitly analogize the injuries caused by spam emails to injuries caused by violations of the TCPA, which the Ninth Circuit has found to create a concrete injury sufficient to confer standing.[5] *Van Patten*, 847 F.3d at 1043. "The legislative findings support the conclusion that Cal. Bus. & Prof. Code § 17529.5 codifies a substantive right to be protected from spam, and that a person who is the subject of a violation of

---

[5] Plaintiff's arguments that she does not have an injury because she "never alleges that she was deceived by the complained of spam" are unavailing. MTR Reply, p. 2. "Like the VPPA and the TCPA, Cal. Bus. & Prof. Code. § 17529.5(a) 'identifies a substantive right that suffers *any time*' a prohibited spam message is transmitted." *Silverstein*, 2018 WL 5795776, at *9 (quoting *Eichenberger*, 876 F.3d at 983). Thus, the injury occurs when the individual receives the spam message; reliance on the deceptive content is not required to create an injury.

that right sustains injuries including lost productivity and resources, annoyance, consumption of valuable digital storage space and financial costs." *Silverstein v. Keynetics, Inc.*, 2018 WL 5795776, at *9 (C.D. Cal. Nov. 5, 2018). Because Plaintiff has alleged that Defendants sent her unwanted and deceptive spam emails, in violation of Cal. Bus. & Prof. Code. § 17529.5(a), she has alleged sufficient injury to confer standing. Therefore, the Court is inclined to deny Plaintiff's Motion to Remand for lack of Article III standing.

## IV. Conclusion

Based on the foregoing discussion, the Court would **GRANT** the Motion to Dismiss and **DENY** the Motion to Remand.