1          UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3        HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE

4

5   JULIA G. DURWARD,

6                    Plaintiff,

7      vs.                          Case No. CV 19-6371-GW

8   ONE TECHNOLOGIES, LLC,

9                    Defendants.
    _____/

10

11

12

13                 REPORTER'S TRANSCRIPT OF
                DEFENDANT'S MOTION TO DISMISS
                 THURSDAY, OCTOBER 3, 2019
14                        8:30 A.M.
                   LOS ANGELES, CALIFORNIA
15

16

17

18

19

20

21

22   _____

23        TERRI A. HOURIGAN, CSR NO. 3838, CCRR
           FEDERAL OFFICIAL COURT REPORTER
           350 WEST FIRST STREET, ROOM 4311
24         LOS ANGELES, CALIFORNIA  90012
                   (213) 894-2849
25

1                    **APPEARANCES OF COUNSEL:**

2

3   **FOR THE PLAINTIFF:**

4       ANDERSON and JUNG
        BY:  JU-IN DANIEL JUNG
5       Attorney at Law
        21600 Oxnard Street, Suite 1030
6       Woodland Hills, California  91367
        daniel@andersonjung.com
7

8   **FOR THE DEFENDANT:**

9       VENABLE LLP
        BY: ARI N. ROTHMAN
10          WITT W. CHANG
        Attorneys at Law
11      2049 Century Park East, Suite 2300
        Los Angeles, California  90067
12      anrothman@venable.com

13  ALSO PRESENT:  Mr. John Greco

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1          LOS ANGELES, CALIFORNIA; THURSDAY, OCTOBER 3, 2019

2                              8:30 A.M.

3                               --oOo--

4

5          THE COURT:  Let me call the matter of *Durward versus*

6  *One Technologies*.

7          MR. JUNG:  Good morning, Your Honor.  Daniel Jung

8  for plaintiff, Julia Durward.

9          MR. ROTHMAN:  Good morning, Your Honor.  Ari Rothman

10  on behalf of defendant, One Technologies.

11      With me today is my colleague, Witt Chang and Mr. John

12  Greco, who is the corporate counsel inside of the company and

13  the director of compliance.

14          THE COURT:  All right.  We're here on a motion to

15  remand, and also a motion to dismiss, and also for scheduling

16  conference.

17      I issued a tentative on the motions.

18      I presume both sides have seen it?

19          MR. JUNG:  Yes, Your Honor.

20          MR. ROTHMAN:  Yes, Your Honor.

21          THE COURT:  Does somebody want to argue something?

22          MR. JUNG:  Yes, Your Honor.  I could start.

23          THE COURT:  Sure.

24          MR. JUNG:  So In terms of the Court's decision on a

25  remand, I would like to discuss three issues that I found.

1    First, the tentative refers to, and I refer to page 10 of

2    the tentative, Your Honor.

3            THE COURT:  I didn't catch that, you referred to

4    page what?

5            MR. JUNG:  Page 10 of the tentative.

6    The Court is referring to findings under E and H as actual

7    damages for this claim.

8    H does not apply because H is for servers.

9    Our client is a user of e-mails.  She's using her Yahoo

10   e-mail account, so if it was Yahoo, H would apply.  But H does

11   not apply to a user of a free e-mail account.

12   Additionally, under E, Your Honor, these e-mails were

13   never received by the users.  These e-mails were blocked by the

14   span filters by Yahoo, and thus no storage spaces were ever

15   taken up; thus, no harm was actually invoked on her client.

16   That is No. 1.

17           THE COURT:  All right.  Let me have a response from

18   the defense as to that.

19           MR. ROTHMAN:  Well, Your Honor, I have two responses

20   to that -- three responses, really.

21   If you take E and H out of that listing, the result

22   wouldn't change the result of the tentative order.

23   When the legislature enacted the statute and listed

24   everything in 17529.5, I guess it is 17529 before it, went

25   into, 3., .4 and so on up through .5 and beyond, it identified

1  a whole host of harms that people and users and Internet

2  service providers were facing as a result of the e-mails.

3        So to us, the predicate is for enacting the statute was

4  the harm that legislature found that it was seeking to curtail.

5        So you can take E and H out, and it wouldn't matter.

6        Second point on E, it says:  Like junk faxes, spam imposes

7  a cost on users.

8        Plaintiff is alleging she's a user, she is a recipient.

9        You either have to be a recipient of the e-mails, you have

10  to be an Internet service provider, or you have to be the

11  Attorney General.

12        So she is alleging she was a recipient, so she was a user.

13        If what they are alleging is she didn't even get the

14  e-mails, then why was the complaint filed in the first place?

15  But, you know, that I guess is a different issue.

16        E and H would just be taken out and it doesn't change the

17  outcome.

18            MR. JUNG:  That is wordsmithing, Your Honor.

19        The recipient is defined under the statute as the user's

20  name and e-mail sent.  It's only the transmission and if it's

21  that person's user's e-mail, they are the recipient.

22        That is defined under 17529.1.

23        I actually have that citation because I knew he was going

24  to make that argument, which is completely bogus.

25            THE COURT:  All right.  What is your response to

1  that?

2          MR. ROTHMAN:  She says in paragraph 9 of our

3  complaint that she received a complaint of e-mails in Los

4  Angeles County.

5          She received them, she is a user, E applies.

6          Even if you take E out of the listing, it doesn't change

7  the outcome of the motion.

8          MR. JUNG:  Again, recipient as in received as in it

9  was sent to her as defined under the statute, not that she

10  actually saw them.  It's completely different.

11          MR. ROTHMAN:  Your Honor, we just don't see the

12  distinction.

13          MR. JUNG:  There is a huge distinction, Your Honor.

14  I can read the statute for you, because I have it here in my

15  notes.

16          THE COURT:  Let me stop.  In paragraph 9 she does

17  say that there were at least 90 alleged unlawful un-solicited

18  commercial e-mails that were sent to her.

19          MR. JUNG:  That's correct.  Being sent and receiving

20  as in seeing them are completely different.

21          Because a spam blocker blocks those e-mails when being

22  seen by the user.

23          She had no idea that she had even received those until

24  software was used to determine whether or not spam was sent to

25  her.

1          THE COURT:  Where is that stated factually?

2          MR. JUNG:  Where?

3          THE COURT:  I understand what you are saying, but

4     where is that stated factually.

5          MR. JUNG:  It doesn't need to be stated factually,

6     Your Honor.

7          Under the causes of action in the elements for spam

8     litigation, under 17529.5, it's only that the subject lines are

9     fraudulent, and it was sent.  That's it.  Those are the

10    elements required.

11         MR. ROTHMAN:  If an e-mail -- I mean, I go back to

12    assume that is true for purposes of this argument, you take E

13    out, you take H out, you still have B, G, I, and everything

14    else in 17529, the beginning that isn't listed here, it just

15    doesn't matter.

16         MR. JUNG:  You can name as many letters as you want,

17    Your Honor, but when you are looking at the case law they are

18    saying that statements regarding actual damages can be claimed.

19         You can say things are difficult, but those are not actual

20    damages.

21         THE COURT:  But the problem I have is that when

22    these items are listed as reasons for the enactment, they are

23    the reasons for the enactment, but there is not a requirement

24    that these things actually apply.  These are the justifications

25    for the enactment.

1     So therefore, that is what we're looking at here is

2 whether or not there is some justification for the legislation

3 that gives rise to a way to avoid what some people refer to as

4 *Spokeo* problem.

5     So again, I don't see why any one of them would

6 necessarily have to apply to give rise to standing that would

7 justify the enactment of this piece of legislation.

8          MR. JUNG:  The cases he cites to states it has to be

9 in the complaint.

10     Even if it's a risk, it states that in both of the cases

11 he cites they were actually in the complaint, that they wanted

12 to divert the risks.

13     Our complaint never had any of those allegations in them.

14     There is a huge distinction that he fails to mention that

15 both of those cases state that those actual harms were actually

16 in the initial pleadings.

17     Our cases don't have those.

18     And the Court states that they have to be alleged in the

19 complaint.

20     Yes, you are right, if we alleged in the complaint we want

21 to stop you from taking up her e-mail box, you would be

22 correct, but it has to be alleged in the complaint.

23     Ours was not alleged in the complaint.  Any one of these

24 nine or whatever these letters are, these reasons -- none of

25 these reasons were alleged in the complaint.

1      THE COURT:  But that doesn't make any difference,

2 that doesn't necessarily show she has standing.

3      MR. JUNG:  No, no, for standing to arise, the

4 e-mails just have to have been sent to her.

5      The trigger for her to have standing is if her e-mail

6 address was used in the recipient link that was sent.

7      THE COURT:  Let me hear from the defense.

8      MR. ROTHMAN:  He admitted he has got standing.

9      THE COURT:  I don't understand your argument.  I

10 agree with the defense.

11      MR. JUNG:  What I'm trying to state the triggering

12 of the statute allowing us to file suit is that her name and

13 her e-mail -- her e-mail was used in the send line.  However,

14 that does not show that there is actual injury to the

15 plaintiff.

16      This is just one of the arguments, Your Honor.  I have

17 another two that he fails to mention.

18      You can have standing without actual injury.  What I mean

19 by standing is a standing to file the lawsuit.

20      THE COURT:  That is exactly the point, you can have

21 the statutory injury without actual injury.

22      MR. ROTHMAN:  Here, I guess what we're saying is in

23 addition to that, if you alleged a 17529.5 claim, then you

24 necessarily have that statutory Article III standing injury in

25 fact based on the legislative findings and substantive rights

1  that the California legislature intended expressly and very

2  clear language when they enacted the legislation.

3          The fact that they didn't do that, they didn't list B, E,

4  G -- that was just a stay in state court.

5              MR. JUNG:  I apologize, Your Honor.  What I meant by

6  standing is standing in state court.

7          She has standing in state court based off the recipient,

8  her line, being the recipient.

9          I had believed you were asking the question of where you

10  have no lawsuit at all, that was my response to that.

11          There is no standing here because there is no actual

12  injury.

13              MR. ROTHMAN:  I am back to where I started with

14  this, if you have alleged a 17529 --

15              THE COURT:  I understand that argument now from both

16  sides.

17          What are the plaintiff's other two arguments?

18              MR. JUNG:  Okay.  The plaintiff's other two

19  arguments, Your Honor, we're suing under 17529.2 -- sorry,

20  17529.5

21          What the defendant fails to recognize is 17529, those

22  general allegations work towards all spam litigation.

23          17529.2 was superseded by the CAN-SPAM Act.

24          So 17529.2, which is where a lot of these descriptions

25  like B, E, G, H, a lot of these were for that specific spam

litigation statute, which is no longer in place because of the

CAN-SPAM Act supercedes it.

17529.5 has two sections to it.

One section is for actual damages, and the second section

is for liquidated damages.

Under the case law for you to find liquidated damages or

actual damages, you have to show that she relied on the

fraudulent statements, which is not the case here.

MR. ROTHMAN:  So when the legislature went through

17529, the beginning of it, the legislature did not say, well,

A only applies to .2, and G applies to .3, and 7 applies to .7.

It said this is what we're going to do because we find that

spam is harmful to the public and to Internet service

providers.

And based on all of our findings of fact in our

legislative judgment, whatever precedes or follows our findings

is what we're going to do to address these problems.

Costs -- all of these things, B, E, G, H are all tangible

injuries.

So we don't agree with the argument that 17529 can be read

-- the findings can be read and you can parse them out and say,

this only applies to .3, this only applies to .6.

If the legislature wanted to do that, the legislature

would have done it, and the legislature didn't.  That is Point

No. One.

1      Point No. 2 is in the damages section that my opponent

2  just read, you get actual damages.  That is a remedy that the

3  legislature provided.

4      You link that up with the 17529 findings, and it's

5  perfectly clear that the legislature was intending to enact

6  17529.5 specifically, so that people could get damages for

7  actual injuries.  It matches up entirely.

8      And the fact that you can choose between your remedy, that

9  is just an election of remedies issue that happens later.  It

10  happens after a trial, verdict, whatever it is, but that is way

11  down the road.  You have standing on the front end to bring

12  those claims.

13      One of the cases, you know, that they cited on this for an

14  opposite proposition actually went the other way.

15      Before I get there, the *Hypertouch* case that they cited

16  versus *Valueclick*, that case also basically held that the

17  legislature presupposed that there were actual damages when

18  people were bringing these claims.

19      That was -- when they went into the punitive damages part,

20  that was just because they were trying to resolve, is it a

21  one-year statute of limitations or something else, because the

22  California legislature has this system where if they don't say

23  what the statute of limitations is, you have to default to the

24  code.  That was a very narrow issue, and we don't think that

25  applies here.

1          THE COURT:  All right.  What does plaintiff also

2    want to argue?

3          MR. JUNG:  Your Honor, *Hypertouch* -- all of the

4    cases he is citing are where damages actually occurred.

5          He saw the voice messages on his phone.

6          The server company in *Hypertouch* was the one that received

7    the e-mails.  They were the ones that were taking up hard drive

8    space.  There were actually injuries.

9          In this regard, she didn't even know about the spam

10   e-mails until software was done on her Yahoo account to spot

11   the spam e-mails.  It's totally different.

12         THE COURT:  But those e-mails were on her account?

13         MR. JUNG:  They are in her spam box, which does not

14   take up any e-mail space.

15         You cannot -- if Congress stated something, you know, if

16   Congress, like, for instance -- not Congress, but the state

17   legislation has things like taking up valuable storage space,

18   costly computer bandwidth.  Just because it states it in here

19   does not mean it actually happens.

20         If this Court decides and makes the decision, oh,

21   regardless of it actually happened, we're going to say it

22   actually happened even if it's not pled, which the other two

23   cases pled in their complaints that those things actually did

24   occur.

25         THE COURT:  All right.  Anything else?

 1          MR. JUNG:  Yes, one more thing, Your Honor.

 2      Honestly, it has to be stated under *Van Patten* and *Spokeo*.

 3  It is critical that the Court understands that those things

 4  were in the complaint, the actual damages were in the

 5  complaint.

 6      If you read the first paragraph of *Van Patten*, it says he

 7  claimed he received, like, it actually says, the actual damages

 8  were claimed in the complaint.  It's totally different.

 9      This is a completely different scenario.

10          THE COURT:  All right.  Anything else for me to

11  decide on this matter?

12          MR. ROTHMAN:  Just paragraph 20 of her complaint

13  alleges plaintiff has no relationship with the defendants

14  except as an unwilling recipient of their deceptive e-mails.

15      It sounds to me like based on that allegation alone they

16  pled they are within the confines of the 17529 and the injuries

17  that it was intended to address.

18      We will go with them, and we will go with whatever their

19  complaint says and we think the case should stay here.

20          THE COURT:  All right.  Anything else for me to

21  decide?

22          MR. JUNG:  No, Your Honor.

23          THE COURT:  I will take another look at that, the

24  issue on the remand.

25      Anything else from either side?

1          MR. JUNG:  Yes.  For the tentative ruling that

2    establishes there is no personal jurisdiction here, Your Honor.

3          THE COURT:  Yes.

4          MR. JUNG:  Regarding that, they do file income taxes

5    here.

6       We requested the Court to give us enough time, if the

7    Court finds that there is no general specific jurisdiction,

8    then we're asking that the Court give us enough time to do

9    discovery on why the income taxes are being paid in the state.

10         THE COURT:  What are you talking about, income tax

11   or state tax?

12         MR. JUNG:  State tax.

13         THE COURT:  Let me ask the defendants, do you pay

14   state income tax?

15         MR. ROTHMAN:  We're registered to do business here

16   because we are required to -- under California statute, if we

17   do business here.

18      But we cited a case in our brief where that is not enough

19   to confer specific or general jurisdiction.

20      It's not enough for general jurisdiction because it

21   doesn't make us basically at home here, which is what the test

22   here is under the recent Supreme Court decisions for general

23   jurisdiction.

24      For a specific personal jurisdiction, us paying taxes here

25   has nothing to do with the fact that these third-party

1   affiliates assembled e-mails and sent them out to the

2   plaintiff.

3        That is what the basis was -- that is the only basis for

4   plaintiff's lawsuit are those acts.  And the Court ruled on

5   that, and they are not disputing those fact findings.

6             THE COURT:  All right.  Anything else?

7             MR. JUNG:  Yes, Your Honor.  I'm going to show you

8   how clever these attorneys are.

9        They state that we didn't send e-mails --

10            THE COURT:  I have read them.

11            MR. JUNG:  I read their pleadings and I was, like,

12  man, these guys are clever.  They are clever.

13       But once I shine the light on it, though, you are going to

14  see how it all falls apart.

15       In terms of they stated that we never directed them to

16  send e-mails to California, but they do state we directed them

17  to send it nationwide.

18       What is the difference between saying, hey, I want you to

19  send it to California, New York, Washington D.C., and name all

20  of the states, versus saying, I want you to send it nationwide.

21       So additionally, all of the cases they cite regarding

22  general jurisdiction, Your Honor, are regarding situations

23  where there is no action -- they cite two cases.

24       And the way they cite the two cases -- the first case that

25  they cite really doesn't apply at all because the case they

1    cite is regarding the defendant who was the wrong defendant.

2         All of the facts of that case were that they sued the

3    wrong defendant.  That's why the facts state he had no control

4    of the e-mails, he didn't know what were being sent, he didn't

5    know what they stated because they sued the wrong defendant.

6    He didn't create the e-mails.

7         This is completely different.  They proof the e-mails.

8    They said to send it nationwide.  They actually get copies of

9    the e-mails sent to them so that they know which e-mails are

10   being sent out.

11        Additionally, they would likely have thousands of clients

12   in California.

13             THE COURT:  Let me hear response from the defendant.

14             MR. ROTHMAN:  We have addressed this through

15   declaration.  We have said it in our papers very clearly.  We

16   are geographically agnostic.

17        We don't say "send it to California, New York, Maryland."

18        We say, "We don't care where you send it as long as you

19   don't get us into trouble, and if you do, then you are going to

20   be stepping up and handling it."

21        Among other things, they have attached our guidelines on

22   that.

23        That is not specific jurisdiction.  They don't contest,

24   for example, that we had no idea who their client was until

25   after she made a demand on us.

They don't contest that we didn't send these e-mails out to them.

In terms of -- I think he's referring to the *Zoobuh versus Williams* case.  That was -- I mean, the Court went through extraordinarily detailed analysis --

THE COURT:  Actually there is *Zoobuh versus Williams* and then there is *Zoobuh* versus the other one which was -- what was the name of that one?  *Zoobuh versus Savicom.*

*Zoobuh versus Williams*, there was no personal jurisdiction found.

But in *Zoobuh versus Savicom*, there was personal jurisdiction found precisely because the difference is in the operations that were reviewed in those two cases.

In the *Savicom* case, it was alleged that the defendant directly sent e-mails to Utah which was the state where the District Court was sitting.

And that some of those e-mails were the source of the lawsuit, whereas in *Williams*, that was not the situation.

*Williams* was the defendant who was arguing that it used third parties like the defendants are arguing here.

So, you know, if one adopts the *Williams/Zoobuh*, then there wouldn't be personal jurisdiction, and the facts in the other case are different.

MR. ROTHMAN:  On the tax point, Your Honor, the case that we cited was --

1      THE COURT:  Let me get to plaintiff's counsel,

2  *Zoobuh versus Williams* doesn't help you, because in *Zoobuh*

3  *versus Williams*, the allegation was that the defendant was

4  going through the third parties, third-party publishers.

5      And if one looks at paragraphs 10, 11, and 12 of the

6  Zittlau declaration, that is what the allegations are, and I

7  didn't see anything in the plaintiff's filings that rebutted

8  paragraphs 10, 11, and 12.

9      MR. ROTHMAN:  Their paragraph 2 of their complaint

10 says:  Although the use of phrase agents, they admit through

11 that paragraph, that third party sent them out in their

12 complaint.  That is whole premise of their complaint.

13     Paragraph 2, the case they didn't have the tip of my

14 tongue on the taxes, is *Senne versus Kansas City Royals*

15 *Baseball Corporation*.  It's cited at Document 9, page 10 of 17,

16 line 28, 105 F.Supp 3d at 981.

17          THE COURT:  I'm familiar with that case.

18          MR. ROTHMAN:  Okay.  Great, I will leave it at that.

19          THE COURT:  All right.  Anything else for me to

20 decide?

21          MR. JUNG:  Your Honor, again, those are different.

22          THE COURT:  Let me ask, which *Zoobuh* case are you

23 talking about?  *Zoobuh versus Williams* or *Zoobuh versus*

24 *Savicom*?

25          MR. JUNG:  *Zoobuh versus Williams*, Your Honor.

1    Again, *Zoobuh versus Williams*, when they use third-party

2    publishers, they were not -- am I getting the two cases mixed

3    up here?

4           THE COURT:  I don't know what your thinking is.  In

5    other words, I know what I have read, and, you know, *Williams*

6    is one case, *Zoobuh versus Williams* is different than *Zoobuh*

7    *versus Savicom*.

8    If you look at my tentative on pages 5 and 6, I'm talking

9    about *Zoobuh versus Williams*, but in the footnote 2 on page 7,

10   there is a distinction that is drawn in the subsequent *XMission*

11   case, which is also from the District of Utah, which

12   differentiates between *Zoobuh versus Williams*, and *Zoobuh*

13   *versus Savicom.*

14          MR. JUNG:  So under *Zoobuh versus Williams* where you

15   are discussing Thrive, and this is according to your tentative,

16   it says, Thrive asserted that they did not draft the

17   contents --

18          THE COURT:  You are going to have to read slower.

19          MR. JUNG:  I am sorry, Your Honor.

20          Thrive asserted that it did not draft the contents

21   of the e-mail sent by the publishers reviewed or approved them

22   or knew where they were being sent.

23   It's completely different.  In this scenario, they saw the

24   e-mails being sent.

25   They said to send it nationwide, which includes

California, so they know where they are being sent.

For them to say, oh, we didn't know they were being sent
to California is --

THE COURT: But the methodology is the problem, not
the fact that e-mails go to California or anywhere else in the
country. That is the problem.

In other words, they are claiming they don't control that
aspect of it.

So even though they may approve the e-mail messages
themselves, even though they may approve that in general they
would like the e-mails to go throughout the country, there is
no indication that they are telling the third-party publisher
to do it in a manner which violates the law, and so that is the
problem that you have.

MR. JUNG: If they are approving the e-mails, Your
Honor, and they know they are fraudulent in nature, how is it
they are not allowing it to be sent?

This is where I'm having a disconnect.

This would be tantamount to us saying, hey, if we decided
-- if I'm a company and I want to supercede all of the
marketing laws, I'm going to get a Russian marketing company,
put in the contract to send it to wherever you guys want, and
just make sure it's legal, and then walk away from it.

And then all of a sudden jurisdiction disappears? I'm
very confused by that.

1          THE COURT:  Let me hear from --

2          MR. ROTHMAN:  That is not what happened here.  There

3    is no allegation we hired someone in Russia and tried to walk

4    away from anything.

5          We showed up to defend the case, and here we are.

6          Again, the case law is pretty clear they have to show with

7    respect to these 90 e-mails that we did something to reach into

8    California by sending them here, and they didn't show that.

9    They just didn't.

10         I mean our evidence is unrebutted.

11         They alleged in paragraph 2 in their complaint that third

12   parties, you know, did this, and, you know, and the Court

13   considered everything they put forward, but it's well-supported

14   in terms of, you know, rebutting each of those things and

15   focusing on these 90.  They just don't have it here.

16         THE COURT:  All right.  Thank you, gentlemen.  I

17   will take the matter under submission.

18              (The proceedings concluded at 10:18 a.m.)

19                              *  *  *

20

21

22

23

24

25

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3     COUNTY OF LOS ANGELES    )
                               )
4     STATE OF CALIFORNIA      )

5

6            I, TERRI A. HOURIGAN, Federal Official Realtime

7     Court Reporter, in and for the United States District Court for

8     the Central District of California, do hereby certify that

9     pursuant to Section 753, Title 28, United States Code that the

10    foregoing is a true and correct transcript of the

11    stenographically reported proceedings held in the

12    above-entitled matter and that the transcript page format is in

13    conformance with the regulations of the judicial conference of

14    the United States.

15

16    Date:  December 11, 2019

17

18

19                         /s/ TERRI A. HOURIGAN

20    _____
                   TERRI A. HOURIGAN, CSR NO. 3838, CCRR
21                  Federal Official Court Reporter

22

23

24

25

**UNITED STATES DISTRICT COURT**

| / | 6 | | B | CENTRAL [1] - 1:2 |
|---|---|---|---|---|

**/**

/s [1] - 23:19

**1**

**1** [1] - 4:16
**10** [5] - 4:1, 4:5, 19:5, 19:8, 19:15
**1030** [1] - 2:5
**105** [1] - 19:16
**10:18** [1] - 22:18
**11** [3] - 19:5, 19:8, 23:16
**12** [2] - 19:5, 19:8
**17** [1] - 19:15
**17529** [8] - 4:24, 7:14, 10:14, 10:21, 11:10, 11:20, 12:4, 14:16
**17529.1** [1] - 5:22
**17529.2** [3] - 10:19, 10:23, 10:24
**17529.5** [6] - 4:24, 7:8, 9:23, 10:20, 11:3, 12:6
**19-6371-GW** [1] - 1:7

**2**

**2** [6] - 11:11, 12:1, 19:9, 19:13, 20:9, 22:11
**20** [1] - 14:12
**2019** [3] - 1:13, 3:1, 23:16
**2049** [1] - 2:11
**213** [1] - 1:24
**21600** [1] - 2:5
**2300** [1] - 2:11
**28** [2] - 19:16, 23:9

**3**

**3** [5] - 1:13, 3:1, 4:25, 11:11, 11:22
**350** [1] - 1:23
**3838** [2] - 1:22, 23:20
**3d** [1] - 19:16

**4**

**4** [1] - 4:25
**4311** [1] - 1:23

**5**

**5** [2] - 4:25, 20:8

**6**

**6** [2] - 11:22, 20:8

**7**

**7** [3] - 11:11, 20:9
**753** [1] - 23:9

**8**

**894-2849** [1] - 1:24
**8:30** [1] - 1:14, 3:2

**9**

**9** [3] - 6:2, 6:16, 19:15
**90** [3] - 6:17, 22:7, 22:15
**90012** [1] - 1:24
**90067** [1] - 2:11
**91367** [1] - 2:6
**981** [1] - 19:16

**A**

**a.m** [1] - 22:18
**A.M** [2] - 1:14, 3:2
**above-entitled** [1] - 23:12
**according** [1] - 20:15
**account** [4] - 4:10, 4:11, 13:10, 13:12
**Act** [2] - 10:23, 11:2
**action** [2] - 7:7, 16:23
**acts** [1] - 16:4
**actual** [15] - 4:6, 7:18, 7:19, 8:15, 9:14, 9:18, 9:21, 10:11, 11:4, 11:7, 12:2, 12:7, 12:17, 14:4, 14:7
**addition** [1] - 9:23
**additionally** [1] - 4:12, 16:21, 17:11
**address** [3] - 9:6, 11:17, 14:17
**addressed** [1] - 17:14
**admit** [1] - 19:10
**admitted** [1] - 9:8
**adopts** [1] - 18:21
**affiliates** [1] - 16:1
**agents** [1] - 19:10
**agnostic** [1] - 17:16
**agree** [2] - 9:10, 11:20
**allegation** [3] - 14:15, 19:3, 22:3

**allegations** [3] - 8:13, 10:22, 19:6
**alleged** [10] - 6:17, 8:18, 8:20, 8:22, 8:23, 8:25, 9:23, 10:14, 18:14, 22:11
**alleges** [1] - 14:13
**alleging** [3] - 5:8, 5:12, 5:13
**allowing** [2] - 9:12, 21:17
**alone** [1] - 14:15
**ALSO** [1] - 2:13
**analysis** [1] - 18:5
**ANDERSON** [1] - 2:4
**Angeles** [2] - 2:11, 6:4
**ANGELES** [4] - 1:14, 1:24, 3:1, 23:3
**anrothman@venable.com** [1] - 2:12
**apart** [1] - 16:14
**apologize** [1] - 10:5
**APPEARANCES** [1] - 2:1
**applies** [7] - 6:5, 11:11, 11:22, 12:25
**apply** [6] - 4:8, 4:10, 4:11, 7:24, 8:6, 16:25
**approve** [2] - 21:9, 21:10
**approved** [1] - 20:21
**approving** [1] - 21:15
**argue** [2] - 3:21, 13:2
**arguing** [2] - 18:19, 18:20
**argument** [5] - 5:24, 7:12, 9:9, 10:15, 11:20
**arguments** [3] - 9:16, 10:17, 10:19
**ARI** [1] - 2:9
**Ari** [1] - 3:9
**arise** [1] - 9:3
**Article** [1] - 9:24
**aspect** [1] - 21:8
**assembled** [1] - 16:1
**asserted** [2] - 20:16, 20:20
**assume** [1] - 7:12
**attached** [1] - 17:21
**Attorney** [2] - 2:5, 5:11
**attorneys** [1] - 16:8
**Attorneys** [1] - 2:10
**avoid** [1] - 8:3

**B**

**bandwidth** [1] - 13:18
**Baseball** [1] - 19:15
**based** [4] - 9:25, 10:7, 11:15, 14:15
**basis** [2] - 16:3
**beginning** [2] - 7:14, 11:10
**behalf** [1] - 3:10
**between** [3] - 12:8, 16:18, 20:12
**beyond** [1] - 4:25
**blocked** [1] - 4:13
**blocker** [1] - 6:21
**blocks** [1] - 6:21
**bogus** [1] - 5:24
**box** [2] - 8:21, 13:13
**brief** [1] - 15:18
**bring** [1] - 12:11
**bringing** [1] - 12:18
**business** [2] - 15:15, 15:17
**BY** [2] - 2:4, 2:9

**C**

**CALIFORNIA** [5] - 1:2, 1:14, 1:24, 3:1, 23:4
**California** [14] - 2:6, 2:11, 10:1, 12:22, 15:16, 16:16, 16:19, 17:12, 17:17, 21:1, 21:3, 21:5, 22:8, 23:8
**CAN** [2] - 10:23, 11:2
**CAN-SPAM** [2] - 10:23, 11:2
**cannot** [1] - 13:15
**care** [1] - 17:18
**case** [21] - 7:17, 11:6, 11:8, 12:15, 12:16, 14:19, 15:18, 16:24, 16:25, 17:2, 18:4, 18:14, 18:23, 18:24, 19:13, 19:17, 19:22, 20:6, 20:11, 22:5, 22:6
**Case** [1] - 1:7
**cases** [12] - 8:8, 8:10, 8:15, 8:17, 12:13, 13:4, 13:23, 16:21, 16:23, 16:24, 18:13, 20:2
**catch** [1] - 4:3
**causes** [1] - 7:7
**CCRR** [2] - 1:22, 23:20
**Central** [1] - 23:8

**CENTRAL** [1] - 1:2
**Century** [1] - 2:11
**CERTIFICATE** [1] - 23:1
**certify** [1] - 23:8
**CHANG** [1] - 2:10
**Chang** [1] - 3:11
**change** [4] - 4:22, 5:16, 6:6
**choose** [1] - 12:8
**citation** [1] - 5:23
**cite** [5] - 16:21, 16:23, 16:24, 16:25, 17:1
**cited** [5] - 12:13, 12:15, 15:18, 18:25, 19:15
**cites** [2] - 8:8, 8:11
**citing** [1] - 13:4
**City** [1] - 19:14
**claim** [2] - 4:7, 9:23
**claimed** [3] - 7:18, 14:7, 14:8
**claiming** [1] - 21:7
**claims** [2] - 12:12, 12:18
**clear** [3] - 10:2, 12:5, 22:6
**clearly** [1] - 17:15
**clever** [2] - 16:8, 16:12
**client** [3] - 4:9, 4:15, 17:24
**clients** [1] - 17:11
**Code** [1] - 23:9
**code** [1] - 12:24
**colleague** [1] - 3:11
**commercial** [1] - 6:18
**company** [4] - 3:12, 13:6, 21:20, 21:21
**complaint** [20] - 5:14, 6:3, 8:9, 8:11, 8:13, 8:19, 8:20, 8:22, 8:23, 8:25, 14:4, 14:5, 14:8, 14:12, 14:19, 19:9, 19:12, 22:11
**complaints** [1] - 13:23
**completely** [6] - 5:24, 6:10, 6:20, 14:9, 17:7, 20:23
**compliance** [1] - 3:13
**computer** [1] - 13:18
**concluded** [1] - 22:18
**confer** [1] - 15:19
**conference** [2] - 3:16, 23:13

confines [1] - 14:16
conformance [1] - 23:13
confused [1] - 21:25
Congress [3] - 13:15, 13:16
considered [1] - 22:13
contents [2] - 20:17, 20:20
contest [2] - 17:23, 18:1
contract [1] - 21:22
control [2] - 17:3, 21:7
copies [1] - 17:8
corporate [1] - 3:12
Corporation [1] - 19:15
correct [3] - 6:19, 8:22, 23:10
cost [1] - 5:7
costly [1] - 13:18
costs [1] - 11:18
counsel [2] - 3:12, 19:1
COUNSEL [1] - 2:1
country [2] - 21:6, 21:11
COUNTY [1] - 23:3
County [1] - 6:4
COURT [40] - 1:1, 1:23, 3:5, 3:14, 3:21, 3:23, 4:3, 4:17, 5:25, 6:16, 7:1, 7:3, 7:21, 9:1, 9:7, 9:9, 9:20, 10:15, 13:1, 13:12, 13:25, 14:10, 14:20, 14:23, 15:3, 15:10, 15:13, 16:6, 16:10, 17:13, 18:6, 19:1, 19:17, 19:19, 19:22, 20:4, 20:18, 21:4, 22:1, 22:16
court [3] - 10:4, 10:6, 10:7
Court [15] - 4:6, 8:18, 13:20, 14:3, 15:6, 15:7, 15:8, 15:22, 16:4, 18:4, 18:16, 22:12, 23:7, 23:20
Court's [1] - 3:24
create [1] - 17:6
critical [1] - 14:3
CSR [2] - 1:22, 23:20
curtail [1] - 5:4
CV [1] - 1:7

**D**

D.C [1] - 16:19
damages [15] - 4:7, 7:18, 7:20, 11:4, 11:5, 11:6, 11:7, 12:1, 12:2, 12:6, 12:17, 12:19, 13:4, 14:4, 14:7
DANIEL [1] - 2:4
Daniel [1] - 3:7
daniel@
andersonjung.com [1] - 2:6
Date [1] - 23:16
December [1] - 23:16
deceptive [1] - 14:14
decide [3] - 14:11, 14:21, 19:20
decided [1] - 21:19
decides [1] - 13:20
decision [2] - 3:24, 13:20
decisions [1] - 15:22
declaration [2] - 17:15, 19:6
default [1] - 12:23
defend [1] - 22:5
DEFENDANT [1] - 2:8
defendant [10] - 3:10, 10:21, 17:1, 17:3, 17:5, 17:13, 18:14, 18:19, 19:3
DEFENDANTS [1] - 1:13
defendants [3] - 14:13, 15:13, 18:20
Defendants [1] - 1:9
defense [3] - 4:18, 9:7, 9:10
defined [3] - 5:19, 5:22, 6:9
demand [1] - 17:25
descriptions [1] - 10:24
detailed [1] - 18:5
determine [1] - 6:24
difference [3] - 9:1, 16:18, 18:12
different [11] - 5:15, 6:10, 6:20, 13:11, 14:8, 14:9, 17:7, 18:23, 19:21, 20:6, 20:23
differentiates [1] - 20:12
difficult [1] - 7:19
directed [2] - 16:15, 16:16

directly [1] - 18:15
director [1] - 3:13
disappears [1] - 21:24
disconnect [1] - 21:18
discovery [1] - 15:9
discuss [1] - 3:25
discussing [1] - 20:15
DISMISS [1] - 1:13
dismiss [1] - 3:15
disputing [1] - 16:5
distinction [4] - 6:12, 6:13, 8:14, 20:10
District [4] - 18:16, 20:11, 23:7, 23:8
DISTRICT [3] - 1:1, 1:2, 1:3
divert [1] - 8:12
DIVISION [1] - 1:2
Document [1] - 19:15
done [2] - 11:24, 13:10
down [1] - 12:11
draft [2] - 20:16, 20:20
drawn [1] - 20:10
drive [1] - 13:7
Durward [2] - 3:5, 3:8
DURWARD [1] - 1:5

**E**

e-mail [12] - 4:10, 4:11, 5:20, 5:21, 7:11, 8:21, 9:5, 9:13, 13:14, 20:21, 21:9
e-mails [31] - 4:9, 4:12, 4:13, 5:2, 5:9, 5:14, 6:3, 6:18, 6:21, 9:4, 13:7, 13:10, 13:11, 13:12, 14:14, 16:1, 16:9, 16:16, 17:4, 17:6, 17:7, 17:9, 18:1, 18:15, 18:17, 20:24, 21:5, 21:11, 21:15, 22:7
East [1] - 2:11
either [2] - 5:9, 14:25
election [1] - 12:9
elements [2] - 7:7, 7:10
enact [1] - 12:5
enacted [2] - 4:23, 10:2
enacting [1] - 5:3
enactment [4] - 7:22,

7:23, 7:25, 8:7
end [1] - 12:11
entirely [1] - 12:7
entitled [1] - 23:12
establishes [1] - 15:2
evidence [1] - 22:10
exactly [1] - 9:20
example [1] - 17:24
except [1] - 14:14
expressly [1] - 10:1
extraordinarily [1] - 18:5

**F**

F.Supp [1] - 19:16
facing [1] - 5:2
fact [7] - 9:25, 10:3, 11:15, 12:8, 15:25, 16:5, 21:5
facts [5] - 17:2, 17:3, 18:22
factually [3] - 7:1, 7:4, 7:5
fails [3] - 8:14, 9:17, 10:21
falls [1] - 16:14
familiar [1] - 19:17
faxes [1] - 5:6
Federal [2] - 23:6, 23:20
FEDERAL [1] - 1:23
file [3] - 9:12, 9:19, 15:4
filed [1] - 5:14
filings [1] - 19:7
filters [1] - 4:14
findings [7] - 4:6, 9:25, 11:15, 11:16, 11:21, 12:4, 16:5
FIRST [1] - 1:23
first [4] - 4:1, 5:14, 14:6, 16:24
focusing [1] - 22:15
follows [1] - 11:16
footnote [1] - 20:9
FOR [2] - 2:3, 2:8
foregoing [1] - 23:10
format [1] - 23:12
forward [1] - 22:13
fraudulent [3] - 7:9, 11:8, 21:16
free [1] - 4:11
front [1] - 12:11

**G**

general [2] - 10:22, 15:7, 15:19, 15:20,

15:22, 16:22, 21:10
General [1] - 5:11
gentlemen [1] - 22:16
geographically [1] - 17:16
GEORGE [1] - 1:3
great [1] - 19:18
Greco [2] - 2:13, 3:12
guess [3] - 4:24, 5:15, 9:22
guidelines [1] - 17:21
guys [2] - 16:12, 21:22

**H**

handling [1] - 17:20
hard [1] - 13:7
harm [2] - 4:15, 5:4
harmful [1] - 11:13
harms [2] - 5:1, 8:15
hear [3] - 9:7, 17:13, 22:1
held [2] - 12:16, 23:11
help [1] - 19:2
hereby [1] - 23:8
Hills [1] - 2:6
hired [1] - 22:3
home [1] - 15:21
honestly [1] - 14:2
Honor [27] - 3:7, 3:9, 3:19, 3:20, 3:22, 4:2, 4:12, 4:19, 5:18, 6:11, 6:13, 7:6, 7:17, 9:16, 10:5, 10:19, 13:3, 14:1, 14:22, 15:2, 16:7, 16:22, 18:24, 19:21, 19:25, 20:19, 21:16
HONORABLE [1] - 1:3
host [1] - 5:1
HOURIGAN [4] - 1:22, 23:6, 23:19, 23:20
huge [2] - 6:13, 8:14
Hypertouch [3] - 12:15, 13:3, 13:6

**I**

idea [2] - 6:23, 17:24
identified [1] - 4:25
III [1] - 9:24
imposes [1] - 5:6
IN [1] - 2:4

**includes** [1] - 20:25
**income** [4] - 15:4, 15:9, 15:10, 15:14
**indication** [1] - 21:12
**initial** [1] - 8:16
**injuries** [4] - 11:19, 12:7, 13:8, 14:16
**injury** [6] - 9:14, 9:18, 9:21, 9:24, 10:12
**inside** [1] - 3:12
**instance** [1] - 13:16
**intended** [2] - 10:1, 14:17
**intending** [1] - 12:5
**Internet** [3] - 5:1, 5:10, 11:13
**invoked** [1] - 4:15
**issue** [4] - 5:15, 12:9, 12:24, 14:24
**issued** [1] - 3:17
**issues** [1] - 3:25
**items** [1] - 7:22

## J

**John** [2] - 2:13, 3:11
**JU** [1] - 2:4
**JU-IN** [1] - 2:4
**JUDGE** [1] - 1:3
**judgment** [1] - 11:16
**judicial** [1] - 23:13
**Julia** [1] - 3:8
**JULIA** [1] - 1:5
**Jung** [1] - 3:7
**JUNG** [33] - 2:4, 2:4, 3:7, 3:19, 3:22, 3:24, 4:5, 5:18, 6:8, 6:13, 6:19, 7:2, 7:5, 7:16, 8:8, 9:3, 9:11, 10:5, 10:18, 13:3, 13:13, 14:1, 14:22, 15:1, 15:4, 15:12, 16:7, 16:11, 19:21, 19:25, 20:14, 20:19, 21:15
**junk** [1] - 5:6
**jurisdiction** [12] - 15:2, 15:7, 15:19, 15:20, 15:23, 15:24, 16:22, 17:23, 18:9, 18:12, 18:22, 21:24
**justification** [1] - 8:2
**justifications** [1] - 7:24
**justify** [1] - 8:7

## K

**Kansas** [1] - 19:14

## L

**language** [1] - 10:2
**law** [4] - 7:17, 11:6, 21:13, 22:6
**Law** [2] - 2:5, 2:10
**laws** [1] - 21:21
**lawsuit** [4] - 9:19, 10:10, 16:4, 18:18
**least** [1] - 6:17
**leave** [1] - 19:18
**legal** [1] - 21:23
**legislation** [4] - 8:2, 8:7, 10:2, 13:17
**legislative** [2] - 9:25, 11:16
**legislature** [12] - 4:23, 5:4, 10:1, 11:9, 11:10, 11:23, 11:24, 12:3, 12:5, 12:17, 12:22
**letters** [2] - 7:16, 8:24
**light** [1] - 16:13
**likely** [1] - 17:11
**limitations** [2] - 12:21, 12:23
**line** [3] - 9:13, 10:8, 19:16
**lines** [1] - 7:8
**link** [2] - 9:6, 12:4
**liquidated** [2] - 11:5, 11:6
**list** [1] - 10:3
**listed** [3] - 4:23, 7:14, 7:22
**listing** [2] - 4:21, 6:6
**litigation** [3] - 7:8, 10:22, 11:1
**LLC** [1] - 1:8
**LLP** [1] - 2:9
**look** [2] - 14:23, 20:8
**looking** [2] - 7:17, 8:11
**looks** [1] - 19:5
**Los** [2] - 2:11, 6:3
**LOS** [1] - 1:14, 1:24, 3:1, 23:3

## M

**mail** [12] - 4:10, 4:11, 5:20, 5:21, 7:11, 8:21, 9:5, 9:13, 13:14, 20:21, 21:9
**mails** [31] - 4:9, 4:12, 4:13, 5:2, 5:9, 5:14, 6:3, 6:18, 6:21, 9:4, 13:7, 13:10, 13:11, 13:12, 14:14, 16:1, 16:9, 16:16, 17:4, 17:6, 17:7, 17:9, 18:1, 18:15, 18:17, 20:24, 21:5, 21:11, 21:15, 22:7
**man** [1] - 16:12
**manner** [1] - 21:13
**marketing** [1] - 21:21
**Maryland** [1] - 17:17
**matches** [1] - 12:7
**matter** [6] - 3:5, 5:5, 7:15, 14:11, 22:17, 23:12
**mean** [5] - 7:11, 9:18, 13:19, 18:4, 22:10
**meant** [1] - 10:5
**mention** [2] - 8:14, 9:17
**messages** [2] - 13:5, 21:9
**methodology** [1] - 21:4
**mixed** [1] - 20:2
**morning** [2] - 3:7, 3:9
**MOTION** [1] - 1:13
**motion** [3] - 3:14, 3:15, 6:7
**motions** [1] - 3:17
**MR** [48] - 3:7, 3:9, 3:19, 3:20, 3:22, 3:24, 4:5, 4:19, 5:18, 6:2, 6:8, 6:11, 6:13, 6:19, 7:2, 7:5, 7:11, 7:16, 8:8, 9:3, 9:8, 9:11, 9:22, 10:5, 10:13, 10:18, 11:9, 13:3, 13:13, 14:1, 14:12, 14:22, 15:1, 15:4, 15:12, 15:15, 16:7, 16:11, 17:14, 18:24, 19:9, 19:18, 19:21, 19:25, 20:14, 20:19, 21:15, 22:2

## N

**name** [5] - 5:20, 7:16, 9:12, 16:19, 18:8
**narrow** [1] - 12:24
**nationwide** [4] - 16:17, 16:20, 17:8, 20:25
**nature** [1] - 21:16
**necessarily** [3] - 8:6, 9:2, 9:24
**need** [1] - 7:5
**never** [3] - 4:13,

8:13, 16:15
**New** [2] - 16:19, 17:17
**nine** [1] - 8:24
**NO** [2] - 1:22, 23:20
**none** [1] - 8:24
**notes** [1] - 6:15
**nothing** [1] - 15:25

## O

**occur** [1] - 13:24
**occurred** [1] - 13:4
**OCTOBER** [2] - 1:13, 3:1
**OF** [6] - 1:2, 1:12, 2:1, 23:1, 23:3, 23:4
**Official** [2] - 23:6, 23:20
**OFFICIAL** [2] - 1:23, 23:1
**once** [1] - 16:13
**One** [3] - 3:6, 3:10, 11:4
**one** [13] - 8:5, 8:23, 9:16, 11:25, 12:13, 12:21, 13:6, 14:1, 18:7, 18:8, 18:21, 19:5, 20:6
**ONE** [1] - 1:8
**one-year** [1] - 12:21
**ones** [1] - 13:7
**oOo** [1] - 3:3
**operations** [1] - 18:13
**opponent** [1] - 12:1
**opposite** [1] - 12:14
**order** [1] - 4:22
**outcome** [2] - 5:17, 6:7
**Oxnard** [1] - 2:5

## P

**page** [6] - 4:1, 4:4, 4:5, 19:15, 20:9, 23:12
**pages** [1] - 20:8
**paid** [1] - 15:9
**papers** [1] - 17:15
**paragraph** [7] - 6:2, 6:16, 14:6, 14:12, 19:9, 19:11, 22:11
**Paragraph** [1] - 19:13
**paragraphs** [2] - 19:5, 19:8
**Park** [1] - 2:11
**parse** [1] - 11:21
**part** [1] - 12:19

**parties** [3] - 18:20, 19:4, 22:12
**party** [5] - 15:25, 19:4, 19:11, 20:1, 21:12
**Patten** [1] - 14:2, 14:6
**pay** [1] - 15:13
**paying** [1] - 15:24
**people** [4] - 5:1, 8:3, 12:6, 12:18
**perfectly** [1] - 12:5
**person's** [1] - 5:21
**personal** [5] - 15:2, 15:24, 18:9, 18:11, 18:22
**phone** [1] - 13:5
**phrase** [1] - 19:10
**piece** [1] - 8:7
**place** [2] - 5:14, 11:1
**plaintiff** [6] - 3:8, 5:8, 9:15, 13:1, 14:13, 16:2
**Plaintiff** [1] - 1:6
**PLAINTIFF** [1] - 2:3
**plaintiff's** [5] - 10:17, 10:18, 16:4, 19:1, 19:7
**pleadings** [2] - 8:16, 16:11
**pled** [3] - 13:22, 13:23, 14:16
**Point** [1] - 11:24
**point** [4] - 5:6, 9:20, 12:1, 18:24
**precedes** [1] - 11:16
**precisely** [1] - 18:12
**predicate** [1] - 5:3
**premise** [1] - 19:12
**PRESENT** [1] - 2:13
**presume** [1] - 3:18
**presupposed** [1] - 12:17
**pretty** [1] - 22:6
**problem** [5] - 7:21, 8:4, 21:4, 21:6, 21:14
**problems** [1] - 11:17
**proceedings** [2] - 22:18, 23:11
**proof** [1] - 17:7
**proposition** [1] - 12:14
**provided** [1] - 12:3
**provider** [1] - 5:10
**providers** [2] - 5:2, 11:14
**public** [1] - 11:13
**publisher** [1] - 21:12
**publishers** [3] - 19:4, 20:2, 20:21

**punitive** [1] - 12:19
**purposes** [1] - 7:12
**pursuant** [1] - 23:9
**put** [2] - 21:22, 22:13

**R**

**reach** [1] - 22:7
**read** [9] - 6:14, 11:20, 11:21, 12:2, 14:6, 16:10, 16:11, 20:5, 20:18
**really** [2] - 4:20, 16:25
**Realtime** [1] - 23:6
**reasons** [4] - 7:22, 7:23, 8:24, 8:25
**rebutted** [1] - 19:7
**rebutting** [1] - 22:14
**received** [7] - 4:13, 6:3, 6:5, 6:8, 6:23, 13:6, 14:7
**receiving** [1] - 6:19
**recent** [1] - 15:22
**recipient** [10] - 5:8, 5:9, 5:12, 5:19, 5:21, 6:8, 9:6, 10:7, 10:8, 14:14
**recognize** [1] - 10:21
**refer** [2] - 4:1, 8:3
**referred** [1] - 4:3
**referring** [2] - 4:6, 18:3
**refers** [1] - 4:1
**regard** [1] - 13:9
**regarding** [5] - 7:18, 15:4, 16:21, 16:22, 17:1
**regardless** [1] - 13:21
**registered** [1] - 15:15
**regulations** [1] - 23:13
**relationship** [1] - 14:13
**relied** [1] - 11:7
**remand** [3] - 3:15, 3:25, 14:24
**remedies** [1] - 12:9
**remedy** [2] - 12:2, 12:8
**reported** [1] - 23:11
**REPORTER** [2] - 1:23, 23:1
**Reporter** [2] - 23:7, 23:20
**REPORTER'S** [1] - 1:12
**requested** [1] - 15:6

**required** [2] - 7:10, 15:16
**requirement** [1] - 7:23
**resolve** [1] - 12:20
**respect** [1] - 2:7
**response** [4] - 4:17, 5:25, 10:10, 17:13
**responses** [2] - 4:19, 4:20
**result** [3] - 4:21, 4:22, 5:2
**reviewed** [2] - 18:13, 20:21
**rights** [1] - 9:25
**rise** [2] - 8:3, 8:6
**risk** [1] - 8:10
**risks** [1] - 8:12
**road** [1] - 12:11
**ROOM** [1] - 1:23
**ROTHMAN** [18] - 2:9, 3:9, 3:20, 4:19, 6:2, 6:11, 7:11, 9:8, 9:22, 10:13, 11:9, 14:12, 15:15, 17:14, 18:24, 19:9, 19:18, 22:2
**Rothman** [1] - 3:9
**Royals** [1] - 19:14
**ruled** [1] - 16:4
**ruling** [1] - 15:1
**Russia** [1] - 22:3
**Russian** [1] - 21:21

**S**

**Savicom** [6] - 18:8, 18:11, 18:14, 19:24, 20:7, 20:13
**saw** [3] - 6:10, 13:5, 20:23
**scenario** [2] - 14:9, 20:23
**scheduling** [1] - 3:15
**second** [2] - 5:6, 11:4
**Section** [1] - 23:9
**section** [3] - 11:4, 12:1
**sections** [1] - 11:3
**see** [4] - 6:11, 8:5, 16:14, 19:7
**seeing** [1] - 6:20
**seeking** [1] - 5:4
**send** [12] - 9:13, 16:9, 16:16, 16:17, 16:19, 16:20, 17:8, 17:17, 17:18, 18:1, 20:25, 21:22
**sending** [1] - 22:8
**Senne** [1] - 19:14

**sent** [20] - 5:20, 6:9, 6:18, 6:19, 6:24, 7:9, 9:4, 9:6, 16:1, 17:4, 17:9, 17:10, 18:15, 19:11, 20:21, 20:22, 20:24, 21:1, 21:2, 21:17
**server** [1] - 13:6
**servers** [1] - 4:8
**service** [3] - 5:2, 5:10, 11:13
**shine** [1] - 16:13
**show** [6] - 9:2, 9:14, 11:7, 16:7, 22:6, 22:8
**showed** [1] - 22:5
**side** [1] - 14:25
**sides** [2] - 3:18, 10:16
**sitting** [1] - 18:16
**situation** [1] - 18:18
**situations** [1] - 16:22
**slower** [1] - 20:18
**software** [2] - 6:24, 13:10
**solicited** [1] - 6:17
**someone** [1] - 22:3
**sorry** [2] - 10:19, 20:19
**sounds** [1] - 14:15
**source** [1] - 18:17
**space** [2] - 13:8, 13:14, 13:17
**spaces** [1] - 4:14
**spam** [10] - 5:6, 6:21, 6:24, 7:7, 10:22, 10:25, 11:13, 13:9, 13:11, 13:13
**SPAM** [2] - 10:23, 11:2
**span** [1] - 4:14
**specific** [5] - 10:25, 15:7, 15:19, 15:24, 17:23
**specifically** [1] - 12:6
**Spokeo** [1] - 14:2
**Spokio** [1] - 8:4
**spot** [1] - 13:10
**standing** [14] - 8:6, 9:2, 9:3, 9:5, 9:8, 9:18, 9:19, 9:24, 10:6, 10:7, 10:11, 12:11
**start** [1] - 3:22
**started** [1] - 10:13
**STATE** [1] - 23:4
**state** [14] - 8:15, 9:11, 10:4, 10:6, 10:7, 13:16, 15:9, 15:11, 15:12, 15:14, 16:9, 16:16, 17:3, 18:15

**statements** [2] - 7:18, 11:8
**STATES** [1] - 1:1
**States** [2] - 23:7, 23:9, 23:14
**states** [5] - 8:8, 8:10, 8:18, 13:18, 16:20
**statute** [1] - 4:23, 5:3, 5:19, 6:9, 6:14, 9:12, 11:1, 12:21, 12:23, 15:16
**statutory** [2] - 9:21, 9:24
**stay** [2] - 10:4, 14:19
**stenographically** [1] - 23:11
**stepping** [1] - 17:20
**still** [1] - 7:13
**stop** [2] - 6:16, 8:21
**storage** [2] - 4:14, 13:17
**Street** [1] - 2:5
**STREET** [1] - 1:23
**subject** [1] - 7:8
**submission** [1] - 22:17
**subsequent** [1] - 20:10
**substantive** [1] - 9:25
**sudden** [1] - 21:24
**sued** [2] - 17:2, 17:5
**suing** [1] - 10:19
**suit** [1] - 9:12
**Suite** [2] - 2:5, 2:11
**supercede** [1] - 21:20
**supercedes** [1] - 11:2
**superseded** [1] - 10:23
**supported** [1] - 22:13
**Supreme** [1] - 15:22
**system** [1] - 12:22

**T**

**tangible** [1] - 11:18
**tantamount** [1] - 21:19
**tax** [5] - 15:10, 15:11, 15:12, 15:14, 18:24
**taxes** [4] - 15:4, 15:9, 15:24, 19:14
**TECHNOLOGIES** [1] - 1:8
**Technologies** [2] - 3:6, 3:10
**tentative** [8] - 3:17,

4:1, 4:2, 4:5, 4:22, 15:1, 20:8, 20:15
**terms** [4] - 3:24, 16:15, 18:3, 22:14
**TERRI** [4] - 1:22, 23:6, 23:19, 23:20
**test** [1] - 15:21
**THE** [40] - 2:3, 2:8, 3:5, 3:14, 3:21, 3:23, 4:3, 4:17, 5:25, 6:16, 7:1, 7:3, 7:21, 9:1, 9:7, 9:9, 9:20, 10:15, 13:1, 13:12, 13:25, 14:10, 14:20, 14:23, 15:3, 15:10, 15:13, 16:6, 16:10, 17:13, 18:6, 19:1, 19:17, 19:19, 19:22, 20:4, 20:18, 21:4, 22:1, 22:16
**themselves** [1] - 21:10
**therefore** [1] - 8:1
**thinking** [1] - 20:4
**third** [8] - 15:25, 18:20, 19:4, 19:11, 20:1, 21:12, 22:11
**third-party** [4] - 15:25, 19:4, 20:1, 21:12
**thousands** [1] - 17:11
**three** [2] - 3:25, 4:20
**Thrive** [3] - 20:15, 20:16, 20:20
**throughout** [1] - 21:11
**THURSDAY** [2] - 1:13, 3:1
**tip** [1] - 19:13
**Title** [1] - 23:9
**TO** [1] - 1:13
**today** [1] - 3:11
**tongue** [1] - 19:14
**totally** [2] - 13:11, 14:8
**towards** [1] - 10:22
**transcript** [2] - 23:10, 23:12
**TRANSCRIPT** [1] - 1:12
**transmission** [1] - 5:20
**trial** [1] - 12:10
**tried** [1] - 22:3
**trigger** [1] - 9:5
**triggering** [1] - 9:11
**trouble** [1] - 17:19
**true** [2] - 7:12, 23:10
**trying** [2] - 9:11,

12:20
**two** [10] - 4:19, 9:17, 10:17, 10:18, 11:3, 13:22, 16:23, 16:24, 18:13, 20:2

## U

**U.S** [1] - 1:3
**un-solicited** [1] - 6:17
**under** [14] - 4:6, 4:12, 5:19, 5:22, 6:9, 7:7, 7:8, 10:19, 11:6, 14:2, 15:16, 15:22, 20:14, 22:17
**United** [3] - 23:7, 23:9, 23:14
**UNITED** [1] - 1:1
**unlawful** [1] - 6:17
**unrebutted** [1] - 22:10
**unwilling** [1] - 14:14
**up** [11] - 4:15, 4:25, 8:21, 12:4, 12:7, 13:7, 13:14, 13:17, 17:20, 20:3, 22:5
**user** [6] - 4:9, 4:11, 5:8, 5:12, 6:5, 6:22
**user's** [2] - 5:19, 5:21
**users** [3] - 4:13, 5:1, 5:7
**Utah** [2] - 18:15, 20:11

## V

**valuable** [1] - 13:17
**Valueclick** [1] - 12:16
**Van** [2] - 14:2, 14:6
**VENABLE** [1] - 2:9
**verdict** [1] - 12:10
**versus** [22] - 3:5, 12:16, 16:20, 18:3, 18:6, 18:7, 18:8, 18:9, 18:11, 19:2, 19:3, 19:14, 19:23, 19:25, 20:1, 20:6, 20:7, 20:9, 20:12, 20:13, 20:14
**violates** [1] - 21:13
**voice** [1] - 13:5
**vs** [1] - 1:7

## W

**walk** [2] - 21:23, 22:3
**Washington** [1] - 16:19

**well-supported** [1] - 22:13
**WEST** [1] - 1:23
**WESTERN** [1] - 1:2
**whereas** [1] - 18:18
**whole** [2] - 5:1, 19:12
**Williams** [15] - 18:4, 18:6, 18:9, 18:18, 18:19, 19:2, 19:3, 19:23, 19:25, 20:1, 20:5, 20:6, 20:9, 20:12, 20:14
**Williams/Zoobuh** [1] - 18:21
**WITT** [1] - 2:10
**Witt** [1] - 3:11
**Woodland** [1] - 2:6
**words** [2] - 20:5, 21:7
**wordsmithing** [1] - 5:18
**WU** [1] - 1:3

## X

**XMission** [1] - 20:10

## Y

**Yahoo** [4] - 4:9, 4:10, 4:14, 13:10
**year** [1] - 12:21
**York** [2] - 16:19, 17:17

## Z

**Zittlau** [1] - 19:6
**Zoobuh** [19] - 18:3, 18:6, 18:7, 18:8, 18:9, 18:11, 19:2, 19:22, 19:23, 19:25, 20:1, 20:6, 20:9, 20:12, 20:14

UNITED STATES DISTRICT COURT